## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: | ) IN CHAPTER 7 PROCEEDINGS |
| LINDELL & SHERRY OLIVER, | ) BK 13-31169 |
| Debtor(s). | ) |
| DONALD M. SAMSON, Trustee, | ) |
| Movant, | ) |
| vs. | ) |
| WELLS FARGO HOME MORTGAGE, | ) |
| Respondent. | ) |

## MOTION TO SELL REAL PROPERTY OF THE ESTATE FREE & CLEAR OF LIENS PURSUANT TO 11 USC 363(f)

Comes now Donald M. Samson, trustee, and files this Motion to Sell Real Property of the Estate Free & Clear of Liens pursuant to 11 USC 363(f) with valid liens to attach to the proceeds and shows as follows:

1. Donald M. Samson is the duly appointed and acting trustee in the above captioned matter.

2. Among the assets of the estate is the real estate at 18 Cambridge Court, Maryville, Illinois, 62062.

3. Donald M. Samson, trustee, has employed Tammy Anderson-Owens, Re/Max Alliance, Collinsville, Illinois, to market and sell for the trustee the herein described real estate.

4. That said broker has obtained for the trustee a contract to purchase said real estate with Marla R. Murphy for $225,000.00, a copy of said contract has been filed with the Court.

5. That Wells Fargo Home Mortgage holds a first mortgage against the real estate with an unpaid principal balance in the amount of $177,417.06.

6. That in order to be able to market the real estate, Donald M. Samson, trustee, had to settle a dispute with the adjoining land owner wherein the adjoining land owner had alleged that the debtors had altered the contours of the subject real estate to cause water run off, flooding and erosion on and to her property. In order to settle this dispute, the trustee did the following:

> 1) Employed a registered land surveyor to survey and propose a solution for grading and reconfiguring the subject property using a landscaper to alleviate the problems, (Order

entered October 1, 2013, authorizing employment of David J. Sherrill of Sherrill Associates, Inc.)

2) Enter into a settlement agreement with the adjoining land owner, (Order entered January 17, 2014.)

7. The trustee has incurred additional expenses for minor repairs and utilities in order for the broker to properly market the property and obtain the best price for the property.

8. That the costs incurred by the trustee were necessary to preserve, protect and dispose of the real estate and the trustee is entitled to these costs pursuant to 11 USC 506(c).

Said costs are itemized as follows:

| | |
|---|---:|
| Sherrill & Associates, Inc. | $5,450.00 |
| Omni Home Builders (landscaper) | 6,919.08 |
| Utilities | 507.37 |
| Pool closing | 300.00 |
| Yard maintenance | 575.00 |
| Repairs & maintenance | 701.00 |
| | $14,452.45 |

9. The contract provides for closing on or before April 25, 2014. The trustee anticipates additional utilities and yard maintenance costs prior to closing.

10. That the property is being sold free and clear of liens with all valid liens to attach to the proceeds pursuant to 11 USC 363(f).

11. The sale is subject to approval by the U.S. Bankruptcy Court.

**WHEREFORE**, Donald M. Samson, trustee, prays that this motion be granted, that the trustee is authorized to sell said real estate free and clear of liens with all valid liens to attach to the proceeds and for such further relief as this Court deems just and equitable.

DATE:  3/4/14

/s/ Donald M. Samson_____
DONALD M. SAMSON, trustee
226 West Main Street, Ste. 102
Belleville, IL  62220
618-235-2226

APPROVED BY THE SOUTHWESTERN ILLINOIS REGIONAL MULTIPLE LISTING SERVICE, INC



## CONTRACT TO PURCHASE REAL ESTATE



This Contract has been prepared by legal counsel to SIR/MLS, Inc. and is intended solely for use by REALTOR® members of the REALTOR® Association of Southwestern Illinois, Inc. and the Greater Gateway Association of REALTORS®, Inc. Any unauthorized use is strictly prohibited.

Date: __Feb. 15, 2014__

THIS IS A LEGALLY BINDING CONTRACT; IF NOT UNDERSTOOD, SEEK COMPETENT LEGAL ADVICE.

1. **MUTUAL COVENANTS.** Seller agrees to sell and Buyer agrees to purchase the following described real estate, together with all appurtenances thereof upon the terms set forth in this Contract: Legal Description/Permanent Parcel Number __13-2-21-09-04-404-009__ situated in __Madison__ County, Illinois, commonly known as __Cambridge Ct., Maryville, IL 62062__ with an approximate lot size of __59.58 x 188.26 irr__ ("Property") Mobile home __n/a__ Model __n/a__ ID# __n/a__

   "Buyer" and "Seller" as used in this Contract shall mean those parties respectively set forth on the signature page hereof. For purposes hereof, this document and all approved addenda shall be referred to as the "Contract".

2. **DUAL AGENT.** The Parties confirm(s) that they have previously consented to the Designated Agent (designated on the last page of this Contract), acting as a dual agent in providing brokerage services on behalf and specifically consent(s) to such Designated Agent acting as a dual agent in regard to this transaction.

   SELLER INITIALS _____   BUYER INITIALS _____

3. **INCLUSIONS/EXCLUSIONS:** The following ITEMS, only if present in the Property, are included in the sale and are the exclusive property of the Seller, having been paid in full:

   | | | | |
   |---|---|---|---|
   | Above Ground Swimming Pool & Equipment | Carpeting | Gas Grill (attached) | Shades |
   | All Bathroom Mirrors | Central Vacuum/Attachments | Gas Logs | Smoke Alarm |
   | All Ceiling Fans | Curtain Rods | HVAC System | Storm Doors/Windows |
   | Attached Mirrors | Exterior Gas or Electric Lights | Light Fixtures | Sump Pump |
   | Attic Fan | Fences | Plants & Shrubbery | Television Antenna |
   | Awnings | Fireplace Screens/Doors | Satellite Dish/Receiver | Utility Shed |
   | Blinds | Fuel Tank & Fuel | Screens | Ventilating Fans |
   | Built-in Appliances | Garage Door Opener & All Remotes | Security System | Water Heater |
   | | | | Water Softening System |

   In addition, the following items are included: _____

   _____

   _____

   The following items are excluded: _____

   _____

   _____

4. **OFFER AND ACCEPTANCE.** These terms shall constitute an offer, which shall expire and any Earnest Money (hereafter defined) shall be returned, unless the offer is accepted on or before the Acceptance Deadline (hereafter defined). NO CONTRACT SHALL EXIST BETWEEN THE PARTIES UNLESS THIS CONTRACT AND ALL ADDENDA (INCLUDING COUNTER OFFERS) IS/ARE SIGNED BY BOTH BUYER AND SELLER. THE "EFFECTIVE DATE" OF THE CONTRACT SHALL BE THE LAST DATE THAT ALL PARTIES HAVE SIGNED THIS CONTRACT AND ALL ADDENDA (INCLUDING COUNTER OFFERS, IF ANY).

5. **TENANCY.** Title to be taken as (Choose one) ☐ joint tenants ☐ tenants in common ☐ tenants by the entirety ☒ tenant in severalty ☐ to be determined.

6. **PURCHASE PRICE.** $__225,000.00__ ("Purchase Price") $__1,000.00__ ("Earnest Money") to be held in the escrow account of __Re/Max Alliance__, escrow agent, for disposition in accordance with this Contract and as required by law.

7. **HOME WARRANTY PLAN.** Homeowner's warranty Contract ☐ waived ☒ provided by: ☐ Buyer ☒ Seller from __seller's choice/pool coverage__ not to exceed the cost of $__550.00__. The Parties are advised

INITIALS _____   Page 1 of 11   INITIALS _____
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

Address ___18 Cambridge Court, Maryville, IL 62062___     Date _Feb. 15, 2014_

34  that one of the real estate agencies may receive compensation from the company issuing the Homeowner's
35  warranty Contract.

36  8.  **CLOSING AND POSSESSION.** The "Closing" or "Closing Date" is the day on which the Parties have fulfilled their
37  obligations under the Contract, including instruments necessary to convey title and the deposit of the Purchase
38  Price for disbursement to the Seller. The Closing under this Contract shall take place on or before__April 25, 2014__
39  at the office of the title company or insured escrow agent ("Closing Agent" or "Title Company") as chosen by the
40  Seller, subject to the provisions of this Contract. *Except as may be provided by Addendum, Seller shall deliver*
41  *possession and keys to the Property to the Buyer no later than the time of Closing.* Seller agrees to leave the
42  Property in broom clean condition, free of all litter, trash and/or debris, and to remove all personal property not
43  sold to Buyer. Buyer and Seller authorize the Closing Agent to release to the real estate agent(s) signed copies of
44  the HUD/RESPA statement, including both Buyer and Seller information. Seller grants Buyer and Buyer's
45  Designated Agent the right to enter and "walk through" the Property and the right to have utilities turned on or
46  transferred, at Buyer's expense, *within four (4) days prior to Closing.* The purpose of the "walk through" is for
47  the Buyer and Buyer's Inspector and/or contractors to verify that the Property is in the same general condition it
48  was as of the Effective Date of this Contract and the agreed upon repairs, if any, were completed in a
49  workmanlike manner. Waiver of inspections herein does not waive the right to a "walk through" prior to
50  Closing.

51  9.  **PROPERTY INSPECTION CONTINGENCY.** Subject to the terms of this Section 9, Buyer and Seller agree that the
52  Property is being sold in its present, "AS IS" condition, with no warranties, expressed or implied, and that
53  conditions of the Property that are visible on a reasonable inspection by the Buyer should either be taken into
54  account by the Buyer in the Purchase Price, or the Buyer should make the correction of these conditions by Seller
55  a requirement of the Contract; this provision shall survive Closing and delivery of Seller's deed to the Buyer.

56  (A)  **DUE DILIGENCE.** The Parties also acknowledge that the real estate agents and agencies involved in this
57  transaction have no special training or experience with respect to the many structural and
58  environmental aspects of the Property, or with discovering and/or evaluating defects, including, but not
59  limited to, structural defects, roof, basement, mechanical equipment, radon gas, lead based paint
60  hazards, sewer systems, wells, mold and mold infestation, plumbing, asbestos, exterior drainage, termite
61  or other type of wood destroying insect infestation or damage. Buyer acknowledges that he will
62  carefully inspect the Property or has been offered the right to have the Property inspected. Buyer also
63  agrees to verify and inspect any defects listed on the Residential Real Property Disclosure Report or the
64  Lead Based Paint Disclosure, Mold Disclosure, if applicable, that are important to Buyer by an
65  independent investigation. Buyer acknowledges that neither Seller nor any real estate agent(s) is an
66  expert at detecting or repairing physical defects in the Property. Buyer states that no important
67  representations concerning the condition of the Property are being relied upon by Buyer, except as
68  disclosed in writing or as fully set forth herein.

69  **PAINTING, DECORATING OR OTHER ITEMS OF A COSMETIC NATURE, REGARDLESS OF THE COST
70  TO REMEDY, SHALL NOT CONSTITUTE A DEFECT FOR THE PURPOSE OF THIS PROPERTY
71  INSPECTION CONTINGENCY.**

72  (B)  **TIME FRAME.** *Within twenty (20) days after the Acceptance Deadline or ten (10) days prior to the
73  Closing Date, (whichever date is earlier),* Buyer, at his option and expense, may obtain written
74  inspection reports from qualified engineers, licensed home inspection services, licensed contractors,
75  environmental, and/or utility companies of the Property and improvements limited to latent defects,
76  structural defects, water intrusion, environmental hazards and damage (including but not limited to,
77  subsidence, undermining, settling, known existing or past mold presence, asbestos, lead and/or lead
78  paint, radon gas, dioxin, and storage of hazardous chemicals—other than those specifically set forth in
79  writing in this Contract), plumbing, water (e.g. source of household water, irrigation, water treatment
80  system, sprinkler system) wells, sewer drainage, basement leaks and mechanical equipment, including
81  appliances, and shall furnish a copy thereof and the Inspection Response to Seller stating in writing any
82  defects unacceptable to Buyer. Failure of Buyer to serve the Inspection Response to the Seller within
83  such time shall waive the contingency. Seller agrees, at his expense, to have all utilities turned on during
84  the period required for the inspection herein, and to make the Property available for inspections on
85  reasonable notice.

86  Buyer shall have the option of declaring the Contract null and void within *five (5) days of receipt of any*
87  *written notice or disclosure,* which indicates that the Property is located in a special flood plain hazard
88  area and which requires the buyer to obtain flood insurance. For Termination Procedure see Paragraph
89  36. Notwithstanding the foregoing, this option shall not exist in the event such written notice of
90  disclosure was provided in the Residential Real Property Disclosure Report executed by both Seller and
91  Buyer prior to the Acceptance Deadline.

92  (C)  **ENVIRONMENTAL DEFECT.** For purposes of this section an environmental defect is a toxic or
93  hazardous substance at a level and condition found above those set as acceptable by the United States
94  Environmental Protection Agency, the Illinois Environmental Protection Agency, the Illinois Emergency
95  Management Agency or applicable local governmental agency. If the stated defect is any toxic or
96  hazardous substance, then Seller, at his option and expense, must have the substance remediated,
97  removed, or reduced to an acceptable level prior to Closing and provide the Buyer proof of re-inspection
98  by the same inspector(s) as previously used or by similarly qualified inspector(s), or terminate the

Address _____18 Cambridge Court, Maryville, IL 62062_____    Date __Feb. 15, 2014__

99  Contract by serving Termination Notice on the Buyer with a release of the Earnest Money. Buyer, at his
100  sole discretion, may accept the plan of remediation or determine to terminate this Contract. In the event
101  either Seller or Buyer elects to terminate the Contract due to an environmental defect as provided
102  herein, the non-terminating Party shall be obligated to sign the document terminating this Contract.
103  For Termination Procedure see Paragraph 36.

104  (D)  **STRUCTURAL DEFECT.** If the stated defect is a structural defect in the foundation, footings, roof
105  construction, sheathing (excluding flashing and coverings), or load-bearing walls that affects the
106  structural integrity of any improvements, Buyer, at his option, may terminate this Contract by delivery
107  of the Termination Notice to Seller. For Termination Procedure see Paragraph 36.

108  (E)  **INSPECTION REMEDIES.** If the Contract is not declared terminated pursuant to Section C
109  <u>Environmental Defect</u> or Section D <u>Structural Defect</u> as described above, and the Buyer has delivered
110  Buyer's Inspection Response within the timeframe of "B" above to the Seller, then Buyer and Seller
111  shall **have ten (10) days after Seller's receipt of the Inspection Response in which to reach an**
112  **agreement in writing for the repair of such defects by the Closing Date, including, but not limited to:**

113  (a)  Who shall pay a specific portion of such repairs and the individual contractors who will do the
114  work, or
115  (b)  An agreed monetary adjustment at Closing in lieu of the correction of defects, or
116  (c)  Terms which include who shall pay and what contractors will do a portion of the work together
117  with an agreed monetary adjustment at closing.

118  (Note: A monetary adjustment may affect the terms of Buyer's loan, e.g. down payment, interest rate and
119  private mortgage insurance).

120  If no written agreement is reached within **said ten (10) days**, then either party may terminate this Contract by
121  delivery of a Termination Notice to the other party. Notwithstanding the previous sentence, **within the ten (10) day**
122  **period**, the Seller's written commitment to correct all the non-structural defects at his expense prior to Closing or the
123  Buyer's written commitment to accept the Property without correction of the defects shall also constitute an
124  "agreement" for purposes of this Section, even if earlier negotiations failed to produce an agreement. In the event of
125  termination, Buyer must show proof of payment to all inspectors prior to release of the Earnest Money. For
126  Termination Procedure see Paragraph 36.

127  (F)  **LIABILITY DISCLAIMER.** The real estate agent(s) shall not be liable in any way for damages incurred
128  pertaining to which inspector or inspectors are chosen to conduct the inspection, the results of any
129  inspections or findings of any Parties in connection with an inspection, or the expense of any party in
130  connection with this or any other provision forming part of this Contract. Seller warrants that as of the
131  date the Contract was signed, he has not received any written notification from any governmental agency
132  requesting any repairs, replacements or alterations to the Property, which have not been satisfactorily
133  made or disclosed to the Buyer in writing and will promptly inform Buyer of any such notice received prior
134  to closing.

135  10.  **FINANCING CONTINGENCY.**

136  ☐ Mortgage Loan. This Contract is contingent upon Buyer obtaining a mortgage loan commitment with a Loan
137  Amount: _____%of the Purchase Price; Initial annual interest rate not greater than:_____ % for a term no
138  less than_____ years amortized over _____ years.
139  Other terms:_____ ("Loan Terms") Seller agrees to pay up
140  to $_____ of Buyer's loan Closing costs, prepaid expenses, origination fee and discount costs (points).
141  Pre-approval letter from Buyer's lender ☐ attached or ☐ shall be submitted to Seller by_____
142  (date) ("Pre-Approval Deadline"). If the Buyer does not provide a written pre-approval letter by the Pre-Approval
143  Deadline, Seller may terminate this Contract by delivery of a Termination Notice **within five (5) days** after such Pre-
144  Approval Deadline. Failure of Seller to timely deliver such Termination Notice shall be considered a waiver of Seller's
145  rights to receive the Pre-Approval Letter. For Termination Procedure see Paragraph 36.

146  In the event Buyer timely satisfies delivery of a pre-approval letter, Seller waives delivery of a pre-approval letter, or a
147  pre-approval letter is not otherwise required by this Contract, the Buyer must also satisfy the balance of the
148  obligations set forth in this Paragraph 10 Financing contingency within **Thirty (30) days after the Acceptance**
149  **Deadline or ten (10) days prior to the Closing Date** (whichever date is earlier) ("Finance Contingency Deadline").
150

151  TYPE:  ☐CNV.     ☐FHA     ☐Rural Dev.     ☐VA     ☐Other_____(Insert appropriate Letter C, D, E or F)
152  **Buyer is required to immediately apply for the financing indicated above and may not rely on any other**
153  **contingency in this Contract or Addenda to this Contract to delay such application. Buyer shall use due**
154  **diligence and good faith in obtaining such financing or assumption and in serving upon Seller written**

INITIALS __/s/__    Page 3 of 11    INITIALS __MRM__
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

Address _____ 18 Cambridge Court, Maryville, IL 62062 _____          Date __Feb. 15, 2014__

155 evidence of a commitment for same (i.e.: all appraisals completed, no sale of other property unless provided
156 by addendum) ("Loan Commitment"). If Buyer has been unable to obtain a Loan Commitment and has served a
157 copy of a written statement by the lender of such inability upon the Seller by the Finance Contingency Deadline, the
158 Buyer may terminate this Contract by service of the Termination Notice on the Seller on or before such Financing
159 Contingency Deadline. If Buyer has not served upon Seller written evidence of a Loan Commitment on or before the
160 Finance Contingency Deadline Seller may, *within five (5) days* after the Finance Contingency Deadline, terminate this
161 Contract by service of the Termination Notice on Buyer. For Termination Procedure, see paragraph 36. The Parties
162 herein grant to the Buyer's lender the permission and authority to disclose information concerning the status of the
163 loan (such as additional requirements or predications) to the respective Designated Agents.

164 **The Parties are cautioned that inspection/repairs to the Property may be a requirement for any loan.** Buyer
165 agrees to accept the financial responsibility for any and all inspections, which may be required by the lender whether,
166 said inspection is for, but not limited to, heating systems, cooling systems, roof condition, well(s), and /or septic
167 systems(s) and/or the total cost of any survey.

168 (A) **FHA/Rural Development Mortgage Loan.** If either the "FHA or Rural Development Mortgage Loan" box is
169 marked, then this Contract is contingent upon Buyer securing a commitment for a FHA or Rural Development
170 mortgage loan based upon the Purchase Price as stated in this Contract, no greater than the Loan Terms as
171 stated above. It is expressly agreed that notwithstanding any other provision of this Contract, the Buyer shall
172 not be obligated to complete the purchase of the Property described herein or to incur any penalty for
173 forfeiture of Earnest Money or otherwise unless the lender has delivered to the Buyer a written statement
174 issued by the Federal Housing Commissioner or a Direct Endorsement lender or governing Rural
175 Development authority setting the appraised value of the Property (excluding closing costs) of not less than
176 the Purchase Price, which statement the lender (by regulation) hereby agrees to deliver to the Buyer
177 promptly after such appraised value statement is made available to the lender. The buyer shall, however,
178 have the privilege and option of proceeding with consummation of this Contract without regard to the
179 amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum
180 mortgage amount the Department of Housing and Urban Development ("HUD") will insure. HUD does not
181 warrant the value or the condition of the Property. The Buyer should satisfy himself that the Purchase Price
182 and the condition of the Property are acceptable. The Parties will sign the FHA Real Estate Certification forms
183 or Rural Development forms required for all FHA/Rural Development mortgages promptly upon receipt of
184 the forms for certification from the lender.

185 (B) **VA Mortgage Loan.** If the "VA Mortgage Loan" box is marked above, then this Contract is contingent upon
186 Buyer securing a commitment for a VA mortgage loan (excluding closing costs), which is not less than the
187 Purchase Price of the Property as stated in this Contract plus charges to be paid by Seller; and no greater than
188 the Loan Terms as stated above. Buyer shall not incur any penalty by forfeiture of Earnest Money or
189 otherwise be obligated to complete the purchase of the Property described herein, if the Purchase Price or
190 cost exceeds the reasonable value of the Property established by the Veterans Administration. The Buyer
191 shall, however, have the privilege and option of proceeding with consummation of the Contract without
192 regard to the amount of the reasonable value established by the Veterans Administration. If the Veterans
193 Administration issues a certificate of reasonable value in an amount less than the Purchase Price of this
194 Contract, Seller shall have the option, *within ten (10) days* after receipt of a copy from Buyer of such
195 certificate of reasonable value, to reduce the Purchase Price to the amount specified therein, or to declare the
196 Contract terminated by delivery of the Termination Notice to the Buyer, which includes a release of Earnest
197 Money to the Buyer.   For Termination Procedure, see Paragraph 36. **Notwithstanding anything in this**
198 **Contract to the Contrary, if current Veterans Administration Regulations require the Seller to pay for**
199 **the wood infestation report required by Section 12 of this Contract, such report must be paid by**
200 **Seller.**

201 (C) **Mortgage Assumption.** If the "Other" box is marked with the Letter C, this Contract is contingent upon
202 Buyer, at Buyer's expense obtaining the lenders' consent, if necessary, to Buyer's assumption of Seller's
203 mortgage, and Contract to pay the existing real estate mortgage loan with an approximate balance of
204 $_____ with an interest rate of not greater than _____% per annum, and with a transfer fee
205 of no more than $_____ or _____% of loan amount. Seller agrees to permit such
206 assumption ☐WITH ☐WITHOUT (check one) release of Seller's obligations. Interest, and other loan
207 expenses, shall be prorated as of Closing. If allowed by Seller's lender, any tax or insurance escrow shall be
208 assigned to Buyer and paid for by Buyer at Closing.

209 (D) **Purchase Money Mortgage (Seller Financing).** If the "Other" box is marked with the Letter D, this Contract is
210 contingent upon the Buyer obtaining a mortgage from Seller on the Loan Terms indicated above. Seller's
211 attorney to prepare the necessary documents, at Buyer's cost and expense, for this transaction and the Parties

INITIALS _____         Page 4 of 11         INITIALS _____
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

Address _____18 Cambridge Court, Maryville, IL 62062_____ Date Feb. 15, 2014

| | | |
|---|---|---|
| 212 | | must agree on the form of same on or before the Finance Contingency Deadline. In the event the parties |
| 213 | | cannot so agree, either party may terminate this Contract. For Termination Procedure, see Paragraph 36. |
| 214 | (E) | **Secondary Mortgage Loan.** If the "Other" box is marked with the Letter E, this Contract is contingent upon |
| 215 | | the Buyer obtaining a second mortgage or bridge loan commitment for _____% of the Purchase Price from |
| 216 | | _____ at an initial rate not greater than _____%, for terms not less than _____ years |
| 217 | | amortized over _____ years with the loan origination fee (points to Buyer) not greater than _____% of the |
| 218 | | loan amount secured by ☐ this Property and/or ☐ other Property,_____ |
| 219 | | _____ (address). |
| 220 | (F) | **Contract for Deed.** If the "Other" box is marked with the Letter F, the Seller shall prepare the necessary |
| 221 | | documents, at Buyer's cost and expense, for this transaction and the Parties must agree on the form of same |
| 222 | | on or before the Finance Contingency Deadline. Contract for Deed Addendum K is attached. For Termination |
| 223 | | Procedure, see Paragraph 36. |
| 224 | ☑ | **Cash Transaction.** This Contract is not contingent on financing. Buyer shall provide to Seller written |
| 225 | | evidence of funds available to Close *on or before fifteen (15) days after Acceptance Deadline but no later* |
| 226 | | *than ten (10) days prior to Closing, whichever is earlier.* If Buyer fails to provide written evidence of funds |
| 227 | | as stated in the prior sentence, Seller may, at its option, and *within five (5) days* of Buyers failure to so |
| 228 | | provide, terminate the Contract by service of Termination Notice to Buyer. For Termination Procedure, see |
| 229 | | Paragraph 36. |
| 230 | 11. | **APPRAISAL.** Buyer's lender may obtain an appraisal *no later than the Finance Contingency Deadline*, or if |
| 231 | | this Contract is a cash transaction (as provided in Section 10), Buyer at his option and expense may obtain an |
| 232 | | appraisal by a certified appraiser *within fifteen (15) days after the Acceptance Deadline.* If the appraisal |
| 233 | | report indicates that the appraised value is not equal to or higher than the Purchase Price, Buyer shall have |
| 234 | | the option to deliver a copy of the appraisal to the Seller within *two (2) days after it is available to Buyer* |
| 235 | | *requesting an adjustment to the Purchase Price.* If Seller does not agree to adjust the Purchase Price down |
| 236 | | to the appraised value *within five (5) days after Seller's receipt of the appraisal report,* Buyer at his option |
| 237 | | may terminate the Contract by delivery of a Termination Notice to Seller *within two (2) days following the* |
| 238 | | *aforementioned five (5) day period.* For Termination Procedure, see Paragraph 36. Nothing herein shall |
| 239 | | prevent Buyer and Seller from reaching a negotiated Purchase Price adjustment prior to the termination of |
| 240 | | the Contract. If Buyer is basing offer on square footage, measurements or boundaries, Buyer should have |
| 241 | | those items independently measured to verify any reported information. |
| 242 | 12. | **WOOD INFESTATION REPORT.** *No later than ten (10) days prior to Closing, the Buyer,* at Buyer's option |
| 243 | | and expense (if a VA Mortgage Loan and required by the VA, at Seller's expense) may obtain a wood |
| 244 | | infestation and/or termite report from a licensed inspection service ("Insect Report") chosen by the Buyer. |
| 245 | | Should the Insect Report disclose either active infestation or substantial (not merely cosmetic) damage as a |
| 246 | | result of such existing or former infestation by termites or other wood-destroying insects about which there |
| 247 | | is no evidence of prior professional treatment, the Buyer may serve an Inspection Response on the Seller |
| 248 | | *within two (2) days after Buyer has received said Insect Report* requesting the Seller to remediate the |
| 249 | | concern raised in the Insect Report. The Seller shall, *within five (5) days after receipt of same ("Seller's* |
| 250 | | *Deadline"),* notify the Buyer of Seller's plan to correct such infestation and/or damage or other options as |
| 251 | | stated in the Inspection Response. If Seller fails to respond, or Buyer rejects Seller's plan, the Buyer may |
| 252 | | terminate the Contract by delivery to Seller of a Termination Notice. For Termination Procedure, see |
| 253 | | Paragraph 36. The Buyer, however, shall have the sole option to accept the Property in its condition for |
| 254 | | treatment and repair of the damage, which option the Buyer may accept within *two (2) days after the* |
| 255 | | *expiration of Seller's Deadline, or by the Closing Date, whichever date is earlier.* If the Buyer fails to |
| 256 | | accept the Seller's plan or the parties fail to negotiate a mutually acceptable plan *within two (2) days after* |
| 257 | | *the expiration of Seller's Deadline or by the Closing Date,* whichever is earlier, Seller may terminate this |
| 258 | | Contract and Buyer shall be entitled to a refund of Earnest Money. For the Termination Procedure see |
| 259 | | Paragraph 36. None of the real estate agents working with the parties shall be responsible in any way with |
| 260 | | respect to the findings disclosed in such Insect Report, nor for the procurement for the Insect Report, nor for |
| 261 | | the delivery of or responses to the Insect Report to either of the Parties, and have made no representations |
| 262 | | concerning prior report or inspections. Further, Buyer acknowledges that the real estate agents hereby state |
| 263 | | that the responsibility for inspection of the Property for termite or wood destroying insects is the obligation |
| 264 | | of the Buyer, and by executing this Contract, Buyer accepts said obligation without any recourse whatsoever |
| 265 | | against the real estate agents. |
| 266 | 13. | **GOVERNMENTAL INSPECTIONS AND OCCUPANCY PERMIT.** Municipalities and governmental bodies |
| 267 | | (including the health department for septic and/or aeration system inspection) vary in their occupancy |
| 268 | | requirements, which include, without limitation, the time for applying for the permit, the number of |
| 269 | | occupants permitted, and the requirement that both Buyer and the Seller receive authorization to occupy the |
| 270 | | Property ("Occupancy Regulation(s)" or "Occupancy Permit"). |
| 271 | | If Seller is required to order an occupancy inspection and comply with all Governmental requirements of the |
| 272 | | Seller, Seller agrees to request same, at Seller's expense, promptly after the Acceptance Deadline. If not |
| 273 | | specified by Governmental requirements, then Seller will not be required to obtain occupancy inspection. If |
| 274 | | the Buyer is required to apply for an Occupancy Permit, Buyer shall apply for the Occupancy Permit within a |

INITIALS _____   Page 5 of 11   INITIALS _MRM_____

275 reasonable time after the Seller has requested an occupancy inspection and shall obtain the Occupancy
276 Permit, per Governmental requirements. Occupancy Regulation(s) must be actually complied with prior to
277 Closing.

278 In the event the Property does not meet such Occupancy Regulation(s) or pass such occupancy inspection and
279 Seller notifies Buyer in writing within *seven (7) days after date of receipt of the occupancy inspection*
280 *report from the applicable governmental authority,* that Seller has not agreed to make the corrections,
281 Buyer and Seller shall have *ten (10) days after date of Buyer's receipt of the Seller's notice to reach an*
282 *agreement* as to who will complete and pay for the required corrections, or to an agreed monetary
283 adjustment at Closing in lieu of any correction. (Note: A monetary adjustment may affect the terms of
284 Buyer's loan, e.g. loan approval, down payment, interest rate, and private mortgage insurance, and lack of an
285 Occupancy Permit at Closing may also affect Buyer's ability to obtain an occupancy permit in the future and
286 utility service.)

287 If no written agreement is reached within *said ten (10) days,* either party may terminate this Contract. For
288 Termination Procedure, see Paragraph 36. A written commitment by Seller within *said ten (10) day period*
289 to make all the required corrections, at his expense, prior to Closing, or a written commitment within the *said*
290 *ten (10) day period* by Buyer to accept the Property without the correction or repair (if permitted by
291 Occupancy Regulation(s)) shall constitute an "agreement" for purposes of this paragraph, even after earlier
292 negotiations failed to produce such an agreement.

293 **Buyer is cautioned not to rely on the Occupancy Regulation(s), but should also satisfy himself**
294 **otherwise as to the condition of the Property.**

295 14. **ACCESS TO PROPERTY.** Seller agrees to permit access to the Property by governmental inspectors,
296 contractors, pest inspectors, Property inspectors, engineers and appraisers selected by Buyer as provided for
297 in the Contract, or inspectors required by Buyer's lender, upon reasonable advance notice to Seller. Buyer
298 and Buyer's agent(s) may also be present during all such inspections and the "walk through." Buyer will hold
299 harmless and indemnify Seller from mechanics liens accrued from its investigations of the property.

300 15. **ADJUSTMENTS AND CLOSING COSTS.** Unless otherwise agreed herein, adjustments, charges, and Closing
301 costs are to be paid by the Parties as follows:

302 **Buyer shall pay (where applicable):**
303 (a) Later date title charges and other Title Company charges (including closing, recording and escrow
304 fees, and all title charges required by the Lender) customarily paid by Buyer;
305 (b) Hazard insurance premiums; flood insurance premium, if required by lender;
306 (c) Credit report(s), appraisal fees and survey;
307 (d) Any charges imposed by the Buyer's lender, for example: points, loan discount fees, private mortgage
308 insurance, VA funding fees, and other loan expenses; property inspections; municipal inspections and
309 occupancy permit;
310 (e) Taxes and assessments, subdivision assessments and condominium assessments levied after closing
311 (see below);
312 (f) Agreed repairs;
313 (g) Real estate commission per written Contract with Buyer's agent; and
314 (h) Wood infestation inspections (except as required by Veterans Administration Regulations)

315 **Seller shall pay (where applicable):**
316 (a) Existing loans on Property (if not assumed by the Buyer);
317 (b) Basic title insurance premium and other Title Company charges (including closing, recording and
318 escrow fees) customarily paid by Seller;
319 (c) Municipal inspection fees;
320 (d) Taxes and assessments, subdivision assessments and condominium assessments levied before
321 Closing (see Section 15 below) and revenue stamps;
322 (e) Real estate commission per written Contract with Seller's agent;
323 (f) Agreed upon repairs; and
324 (g) Transfer of tenant security deposits (if applicable);

325 **Buyer and Seller shall have prorated and adjusted between them on the basis of thirty (30) days to the**
326 **month as of the Closing date (Seller shall pay the last day)**
327 (a) Current rents (Seller to receive rent for day of Closing);
328 (b) Rents which are delinquent over thirty (30) days to be collected by Seller and not adjusted;
329 (c) Ad valorem real estate taxes;
330 (d) Subdivision upkeep assessments and monthly condominium fees;
331 (e) Interest (when Buyer assumes an existing loan); and
332 (f) Utility charges (including, but not limited to, water, sewer, trash and fuel including storage tank).

333 16. **TAXES AND ASSESSMENTS.** The ad valorem real estate taxes and assessments (both governmental and
334 private) shall be apportioned through the Closing Date at the Seller's expense (Seller to have the last day).
335 The proration thereof shall be calculated upon the basis of the most recent tax information, including
336 confirmed multipliers. Any special assessment, regardless of whether such special assessment is a lien on the
337 Property or is required under the covenants, restrictions, or declarations of a subdivision, development, or
338 condominium, which is a one time assessment being paid in installments by the Seller, shall be paid in full at

Address _____18 Cambridge Court, Maryville, IL 62062_____   Date Feb. 15, 2014

339 Seller's expense at the time of Closing. All such taxes and assessments shall constitute a credit to Buyer
340 against the Purchase Price and shall relieve the Seller from any liability to Buyer in connection herewith;
341 however, in the event that the real estate taxes and assessments (specified or otherwise) prorated hereunder
342 are overpaid/underpaid by more than two hundred dollars ($200.00), the party aggrieved by this
343 discrepancy shall be promptly reimbursed such discrepancy by the party receiving the benefit of the
344 discrepancy upon receipt of a written request along with verification of the overpayment/underpayment.
345 Buyer should not assume that Buyer's future real estate tax bills on the property will be the same as the
346 Seller's present tax bill. If the Property is not separately assessed and is part of a larger parcel assessed for
347 tax purposes, the Taxes for the Property shall be further prorated as follows: (i) the value of all
348 improvements on the Property as reflected in the County records and (ii) proportion that the square footage
349 land area of the Property bears to the square footage land area of the larger parcel. IN ANY EVENT, THE
350 REAL ESTATE AGENT(S) AND THE CLOSING AGENT SHALL NOT BE RESPONSIBLE TO EITHER PARTY FOR
351 COLLECTION OF SUCH DISCREPANCY.

352 17. **DEED OF CONVEYANCE.** Seller shall execute a proper deed sufficient to convey the Property to Buyer, or
353 Buyer's nominee, in fee simple, subject to exceptions permitted herein, and delivered to Buyer at Closing
354 upon Buyer's compliance with the terms of this Contract.

355 18. **EVIDENCE OF TITLE.** Within a reasonable time after the Acceptance Deadline, Seller shall deliver a
356 commitment for title insurance ("Title Commitment") issued by a title insurance company ("Title Company")
357 regularly doing business in the county where the Property is located, committing the Title Company to issue a
358 policy in the usual form insuring title to the Property in Buyer's name for the amount of the Purchase Price.

359 *Buyer is cautioned* that there may be subdivision covenants, bylaws, or other restrictions on the use of the
360 Property, all of which should be recorded in the office of the Recorder of Deeds in the county in which the
361 Property is located ("Title Restrictions"). Examples of restrictions include construction of improvements
362 including room additions, a swimming pool, and non-residential uses of the Property such as use of a room
363 for business or the right to keep certain vehicles or animals on the Property. The Buyer is advised to review
364 all easements, government regulations and subdivision restrictions before Closing if the Buyer plans these or
365 similar uses. If Buyer requires assistance in reviewing easements, surveys, restrictions or other matters
366 affecting the title or use of the Property, Buyer should seek competent legal advice. The real estate agents
367 have no responsibility to advise the Buyer about any Title Restrictions concerning the Property.

368 "Permitted Exceptions" to title shall include only the lien of taxes and assessments, zoning laws and building
369 ordinances, easements, apparent or of record, which do not underlie the improvements or render Property
370 unmarketable; covenants and restrictions of record which are not violated by the existing improvements or
371 by the present use of the Property; existing mortgages (which will be satisfied at Closing, if not assumed);
372 coal, gas and other minerals excepted or conveyed in prior transactions; and limitations and conditions
373 imposed by the Illinois Condominium Property Act, if applicable.

374 In the event the Property is governed by the Condominium Property Act, Seller shall furnish Buyer a
375 statement from the Board of Managers, Treasurer, or Managing Agent of the condominium association
376 certifying payment of assessments for the condominium common expenses and, if applicable, proof of waiver
377 or termination or any right of first refusal or general option to purchase contained in the declaration of
378 condominium, together with any other documents required by declaration of condominium or bylaws thereto
379 as precondition to the transfer of title.

380 Buyer shall deliver written notice of exceptions (other than the Permitted Exceptions) to which the Buyer
381 objects and the reasons for the objection to the Seller within *seven (7) days after being furnished the Title*
382 *Commitment.* Seller shall have *five (5) days* to have such title exceptions removed or demonstrate that the
383 objections will be cleared prior to Closing. If Seller is unable to cure such title exceptions or demonstrate that
384 the objections will be cleared prior to Closing, the Buyer shall have the option to terminate this Contract, in
385 which case the Buyer shall deliver to Seller a Termination Notice. For the Termination Procedure, see
386 Paragraph 36. In the event the Title Commitment is not available to allow the full time frames provided
387 above, such time limitations shall be adjusted pro-rata to meet the Closing Date agreed to between the
388 Parties. At closing, title shall only be subject to lien of taxes for current year and thereafter and permitted
389 exceptions.

390 19. **SURVEY.** Buyer may obtain a survey at Buyer's cost, which shall be drawn by a licensed Illinois Land
391 Surveyor, *at least ten (10) days prior to Closing.*

392 (a) *Within five (5) days of receipt of survey,* Buyer shall give written notice of objections to the survey,
393 that: (1) are unacceptable to Buyer and (2) adversely affect the use of the Property. Failure of Buyer
394 to serve written notice of objections to the survey on Seller within such time frame will constitute a
395 waiver by Buyer of any survey objections.

396 (b) If Buyer does timely object, *Seller has five (5) days from receipt of the survey objections* to agree in
397 writing to correct the survey defects, at Seller's expense, prior to Closing, or agree to reduce the
398 Purchase Price based upon the survey objections.

399 (c) If Seller does not so agree as provided in 19(b) hereof, the Buyer may terminate this Contract by
400 delivery of a Termination Notice to the Seller, unless Buyer, *within two (2) additional days,* agrees
401 in writing to accept the Property subject to the survey objections. If the Buyer delivers the
402 Termination Notice, the Seller shall promptly sign the Termination Notice to return the Earnest

INITIALS _____   Page 7 of 11   INITIALS _____
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

Address ___18 Cambridge Court, Maryville, IL 62062___   Date __Feb. 15, 2014__

403  Money to the Buyer. (Note: In the event the Buyer terminates the Contract as a result of the survey,
404  notwithstanding Section (b) above, the Buyer must provide proof of payment to the surveyor, prior
405  to release of the Earnest Money). For the Termination Procedure, see Paragraph 36.

406  20. **HOMEOWNER INSURANCE.** This Contract is contingent upon Buyer's securing evidence of insurability for
407  an Insurance Service Organization Homeowner 3 (ISOHO3) or applicable equivalent policy *within ten (10)*
408  *Business Days after Acceptance Deadline.* If Buyer is unable to obtain evidence of insurability and serves
409  written notice with proof of same to Seller within the time specified, this Contract shall be null and void and
410  Seller shall promptly sign the Termination Notice. For the Termination Procedure, see Paragraph 36. If
411  written notice is not served within the time specified, the Buyer shall be deemed to have waived the
412  contingency and this Contract shall remain in full force and effect.

413  21. **NOTICES.** For the purposes of this Section and other provisions of this Contract, the Buyer or the Seller may
414  be referred to as the "Party" or "Parties." All notices required shall be in writing and shall be served by one
415  party or his Designated Agent to the other party or his Designated Agent. Notice to any one of a multiple
416  person party shall be sufficient notice to all. Notice shall be given in the following manner:

417  (a)  By personal delivery of such notice deemed given upon personal delivery; or

418  (b)  By mailing of such notice to the addresses recited herein by regular mail and by certified mail, return
419        receipt requested. Except as otherwise provided herein, notice served by certified mail, shall be
420        effective on the date of mailing (except mailing on Sunday or a holiday shall be considered effective
421        the next business day); or

422  (c)  By facsimile transmission. Notice by facsimile transmission shall be effective as of the date and time
423        of facsimile transmission, (except facsimile transmission on a Sunday or holiday shall be considered
424        effective the next business day); or

425  (d)  By e-mail, which e-mail shall be deemed effective when transmitted (except e-mail transmitted on a
426        Sunday or holiday shall be considered effective the next business day).

427  22. **RISK OF LOSS.** Risk of loss to the improvements on the Property shall be borne by the Seller until Closing. If,
428  after the Contract is executed the Property is destroyed or damaged by fire, windstorm, or other casualty,
429  Seller shall immediately notify Buyer in writing of the damage or destruction, and as soon as practicable, the
430  amount of insurance proceeds payable, if any. In the event of such loss, the Parties will attempt to agree as
431  follows: (A) Seller shall restore the Property to a condition mutually agreed upon by the Parties and Buyer,
432  at his option and expense, may obtain written inspection reports from qualified engineers, licensed home
433  inspection services, licensed contractors, environmental and/or utility companies to satisfy Buyer that said
434  repairs have been performed or (B) Buyer shall proceed with the transaction and be entitled to all insurance
435  money, if any, payable to Seller under all policies insuring the improvements. Notwithstanding the previous
436  sentence, if the Parties fail to agree to (A) or (B) above *within ten (10) days after Buyer has received*
437  *written notice of such damage or destruction and the amount of the insurance proceeds payable*, the
438  Contract shall be considered terminated. For the Termination Procedure, see Paragraph 36. The termination
439  hereunder does not constitute a default under this Contract by either party.

440  23. **REMEDIES UPON DEFAULT.** If either party defaults in the performance of any obligation of this Contract,
441  the party claiming a default ("Non-Defaulting party") shall notify the other party ("Defaulting party") in
442  writing of the nature of the default. The Non-Defaulting party may, but is not required to provide the
443  Defaulting party with a deadline to cure the default. In the event the default is not cured, then the Non-
444  Defaulting party may seek any remedy at law or in equity, including enforcement of sale and damages. In the
445  event of litigation or arbitration between the Parties, the prevailing party may recover, in addition to
446  damages and/or equitable relief, the cost of litigation, applicable fees, and reasonable attorney's fees. In the
447  event of Earnest Money dispute, parties acknowledge they must agree, in writing, to the disposition of
448  Earnest Money or proceed to a resolution pursuant to the provisions of Paragraph 25. For the Termination
449  Procedure, see Paragraph 36.

450  24. **EARNEST MONEY.** The Real Estate License Act [225ILCS 454/20-20 (h) (8) (B)] requires earnest monies
451  held in escrow be deemed "abandoned" if all of the following transpire: (i) the absence of disbursement, (ii)
452  the absence of the notice of filing of a claim in a court of competent jurisdiction, and (iii) six months have
453  elapsed from the receipt by the broker of a written demand for the escrow monies by either principal to the
454  transaction or either principal's duly authorized agent. In the event of Earnest Money dispute, parties
455  acknowledge they must agree, in writing, to the disposition of Earnest Money as stated in the Termination
456  Notice. Parties further acknowledge real estate brokers have no authority to release Earnest Money without
457  signatures of all parties to the Contract. If the parties fail to agree, the disposition of the Earnest Money shall
458  be distributed pursuant to Paragraph 25, namely, as agreed to by the parties in writing or as directed by a
459  judge or arbitrator, as appropriate.

460  25. **LITIGATION/MEDIATION/ARBITRATION.** Seller and Buyer agree that all disputes or claims for $5,000 or
461  less shall be filed through the small claims procedures available through courts of local jurisdiction. Seller
462  and Buyer agree that any other disputes or claims arising out of or relating to this Contract over $5000,
463  including, without limitation, disputes for the return of the Earnest Money or the overpayment
464  /underpayment of taxes, the breach of this Contract, or the services provided in relation to this Contract,
465  representations, made by the Buyer, Seller or other person or entity in connection with the sale, purchase,
466  financing, condition, or other aspect of this Property, allegations of concealment, misrepresentations,

INITIALS _____   Page 8 of 11   INITIALS _MRM_
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

Address _____18 Cambridge Court, Maryville, IL 62062_____ Date Feb. 15, 2014

467 negligence and/or fraud ("Disputes"), shall be submitted to mediation in accordance with the Rules of
468 Procedures of the Homesellers/Homebuyers Dispute Resolution System as established by the National
469 Association of REALTORS®. The mediation shall be conducted solely between the Seller and the Buyer, and
470 no real estate agents or other third parties may be involuntarily joined into such process. Any agreement
471 signed by the Parties pursuant to the mediation conference shall be binding. The Parties shall pay the fees as
472 set forth in the relevant rules as set forth herein.

473 The Parties further agree that any Disputes or claims for whatever cause or reason that are not resolved by
474 mediation shall be settled by binding arbitration using the services of United States Arbitration & Mediation
475 Midwest, Incorporated, in accordance with its relevant arbitration rules. The Arbitrator's decision shall be
476 final and binding and judgment may be entered thereon. In the event a party fails to proceed with arbitration,
477 unsuccessfully challenges the arbitrator's award, or fails to comply with arbitrator's award, the other party is
478 entitled to costs of suit including a reasonable attorney's fee for having to comply with arbitration or defend
479 or enforce the award. The provisions of this Section concerning arbitration apply to any Disputes or claims
480 brought between the parties.

481 The following matters are excluded from mediation and arbitration hereunder: (a) judicial or non-judicial
482 foreclosure or other action or proceeding to enforce a mortgage, or deed of trust; (b) an unlawful detainer
483 action; (c) the filing or enforcement of a mechanics' lien; or (d) any matter which is in the jurisdiction of a
484 probate court.

485 The filing of a judicial action to enable the recording of a notice of pending action, or for an order of
486 attachment, receivership, injunction, or other provisional remedies, or for the sole purpose of meeting the
487 requirements of a statue of limitation, shall not constitute a waiver of the right to mediate and/or arbitrate
488 under this Section nor shall it constitute a breach of the duty to mediate and/or arbitrate. The escrow agent
489 may not be joined in any action involving Earnest Money, but shall distribute the Earnest Money in
490 accordance with the terms of the final judgment or arbitration award. However, the Escrow Agent may
491 institute an interpleader action to determine the proper receipt of the Earnest Money. Any attorney's fees or
492 other expenses of the Escrow Agent shall be paid from the Earnest Money prior to disbursement to the
493 Parties.

494 26. **ACCEPTANCE DEADLINE DEFINED.** "Acceptance Deadline" is the time from which various time limits and
495 contingencies are to be measured. Unless otherwise agreed in writing, "Acceptance Deadline" is defined as
496 the deadline for acceptance that was provided to the last party whose signature resulted in a Contract (even if
497 that signature was obtained before the deadline) provided however in the event no offer resulted in a
498 Contract, "Acceptance Deadline" is defined as the deadline for acceptance provided in the most current offer.

499 27. **TIMING.** Except for the "Acceptance Deadline" as defined in Section 26 and a deadline stated in days in
500 Addendum A, if any date, time period or deadline hereunder falls on a Sunday or a state or federal holiday,
501 then such date shall be extended to the next occurring business day. Subject to this Paragraph 27, if any
502 provision of the Contract or any Addendum refers to a date, time period, or deadline in "days", said reference
503 to days shall mean calendar days unless specified otherwise.

504 28. **ACKNOWLEDGEMENT.** Buyer acknowledges receipt of the Residential Real Property Disclosure, which was
505 dated prior to the Effective Date of the Contract.

506 29. **BINDING EFFECT.** The Contract shall be binding on and for the benefit of the Parties and their respective
507 heirs, personal representatives, executors, administrators, successors or assigns. Unless specifically stated
508 herein, all provisions of this Contract shall survive the Closing.

509 30. **ENTIRE AGREEMENT.** This Contract constitutes the entire agreement between the Parties hereto and there
510 are no other understandings, written or oral, relating to the terms hereof. The Contract may not be changed,
511 modified or amended, in whole or in part, except in writing by all Parties.

512 31. **ASSIGNABILTY OF CONTRACT.** This Contract is assignable by Buyer only with the written consent of Seller,
513 whose consent shall not be unreasonably withheld. If Seller is taking back a note and mortgage as part of the
514 Purchase Price, or Buyer is assuming an existing note and mortgage, Seller may withhold his consent in his
515 sole and absolute discretion. An assignment does not relieve the Parties of their obligations under the
516 Contract.

517 32. **GOVERNING LAW.** This Contract shall be considered a Contract for the sale of real property and shall be
518 construed in accordance with laws of the State of Illinois. All Parties to the Contract agree to act in good faith
519 and fair dealing with one another.

520 33. **CONSTRUCTION.** Words and phrases shall be construed as in the singular or plural number, and in
521 masculine, feminine or neuter gender according to content. The Illinois Real Estate License Act, in effect on
522 the Acceptance Deadline, shall take precedence over any definition herein to the contrary.

523 34. **FACSIMILE/ELECTRONIC COPIES.** Fully executed facsimile/electronic (e-mail, scanned, etc.) copies shall be
524 deemed true copies, however, Parties shall exchange original copies as soon thereafter as practicable.

525 35. **NON-DISCRIMINATION. THE PARTIES UNDERSTAND AND AGREE THAT IT IS ILLEGAL FOR EITHER OF**
526 **THE PARTIES TO REFUSE TO DISPLAY OR SELL THE PROPERTY TO ANY PERSON ON THE BASIS OF**
527 **RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, ANCESTRY, AGE, MARITAL STATUS, FAMILIAL**
528 **STATUS, PHYSICAL OR MENTAL HANDICAP, MILITARY STATUS OR UNFAVORABLE DISCHARGE FROM**

INITIALS _____   Page 9 of 11   INITIALS _____
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

Address ___18 Cambridge Court, Maryville, IL 62062___   Date ___Feb. 15, 2014___

529  MILITARY OR ANY OTHER CLASS PROTECTED BY ARTICLE 3 OF THE ILLINOIS HUMAN RIGHTS ACT.
530  THE PARTIES AGREE TO COMPLY WITH ALL APPLICABLE FEDERAL, STATE AND LOCAL FAIR HOUSING
531  LAWS.

532  36.  TERMINATION PROCEDURE. In the event either party to this Contract is entitled to deliver a Termination
533  Notice to the other party pursuant to this Contract, the party receiving the Termination Notice has an
534  affirmative obligation to sign the Termination Notice and the Earnest Money shall be disbursed to the
535  terminating party.   If a Termination Notice is provided by a party for a reason other than allowed in the
536  Contract, including any agreed Addenda, that party shall propose a distribution of the Earnest Money that
537  such party deems appropriate under the circumstances; and the receiving party shall accept or reject the
538  proposed Termination Notice within the time requirements of this Paragraph. If either party submits a
539  Termination Notice or refuses to sign the Termination Notice without right under the reasons submitted on
540  the Notice, such party shall be considered in default as described in Paragraph 23. The Termination
541  Notice shall be signed and returned *within five (5) days* or the terms of Paragraph 25 shall govern.

542  37.  ADDENDA. If checked, the following pre-printed addenda are made a part of this Contract:
543  ☐ Addendum A - Contingency on Sale and/or Closing of Buyer's Property
544  ☐ Addendum B - Possession by Seller after Closing
545  ☐ Addendum C - New Construction
546  ☐ Addendum D - Repairs Addendum
547  ☐ Addendum E - Additional Personal Property
548  ☐ Addendum F - Limited Purpose Entry by Buyer prior to Closing
549  ☐ Addendum G - Possession by Buyer prior to Closing
550  ☐ Addendum K - Contract for Deed
551  ☐ Addendum N – Notice of Short Sale Contingency
552  ☐ Addendum S - Secondary Contract
553  ☒ Addendum R – Residential Real Property Disclosure Report
554  ☐ Lead Based Paint Disclosure
555  ☒ Mold Disclosure
556  ☒ Radon Disclosure
557  ☐ Additional Addendum_____

558  **SPECIAL AGREEMENT(S):**
559  ___Buyer to schedule inspections after 21 day notice to creditor's and no objections.___
560  ___This Contract is subject to approval by the U.S. Bankruptcy Court.___ *DaS*
561  _____

562  AGENT INTEREST. Pursuant to 225 ILCS 554/10-27 ___n/a___ is a licensed real estate agent
563  and has an interest, direct or indirect, as the Seller or Buyer of the Property that is the subject of this transaction.

564  INITIALS. The Parties have initialed each of the eleven (11) pages of this Contract. Initialing each of the eleven (11)
565  pages merely acknowledges that the Parties have read and understand the terms indicated on such pages; failure to
566  initial all the pages shall not be cause to invalidate this Contract if all other conditions to the formation of the Contract
567  are satisfied.

**PLEASE PRINT**

568  PARTIES:
569  SELLER ___Donald Samson, Trustee___   BUYER ___Marla R. Murphy___
570  Address: ___226 W. Main, Ste. 102___   Address: ___27 s. Meadow Lane___
571  City/State/Zip: ___Belleville, IL 62220___   City/State/Zip: ___Glen Carbon, IL 62034___
572  SELLER ___[signature]___   BUYER ___n/a___
573  Address: _____   Address: _____
574  City/State/Zip: _____   City/State/Zip: _____
575  E-mail Address (Optional): _____   E-mail Address (Optional): _____
576  Listing Broker: ___Remax Alliance___   Selling Broker: ___Remax Integrity Realty Centre___
577  Address: _____   Address: ___4215 State Rt. 159, Ste. 3___

INITIALS ___[initials]___        Page 10 of 11        INITIALS ___MRM___
Copyright© 2010 Southwestern Illinois Regional Multiple Listing Service, Inc.

|     |                  |                                          |                  |                          |
|-----|------------------|------------------------------------------|------------------|--------------------------|
|     | Address          | 18 Cambridge Court, Maryville, IL 62062  | Date             | Feb. 15, 2014            |
| 578 | City/State/Zip:  | Edwardsville, IL 62025                   | City/State/Zip:  | Glen Carbon, Il 6234     |
| 579 | Phone/Cell:      | 656-2111                                 | Phone/Cell:      | 618-288-7100             |
| 580 | Designated Agent:| Ann Kamadulski                           | Designated Agent:| Sharon Jones             |
| 581 | Phone:           | 292-5102                                 | Phone:           | 558-7191                 |
| 582 | Fax:             |                                          | Fax:             | 345-2072                 |
| 583 | E-mail Address: (Optional): |                               | E-mail Address: (Optional): | sharon.jones@remax.net |

584 Contract to be accepted by Seller by 3:00 P M on Feb. 18, 2014.

585 Buyer: *Marla R. Murphy* 2/15/14    Date     Buyer _____ Date

586 OFFER TO PURCHASE RECEIVED BY LISTING AGENCY:    I HEREBY ACKNOWLEDGE RECEIPT OF $ 1,000.00
587 DATE _____    EARNEST MONEY MENTIONED ABOVE.
588 BY _____    BY *Sharon Jones*

589 On this _____ day of _____, _____ (year), Seller ☐ Accepts ☐ Rejects or ☐ Counter Offers – the foregoing
590 contract. If Seller counters, Counteroffer Addendum is attached.

591 Seller _____ Date    Seller _____ Date
592 TITLE COMPANY INFORMATION:
593 Name: _____    Contact: _____
594 Address: _____
595 Phone: _____ Fax: _____ E-Mail Address: _____

# Illinois Association of REALTORS®
## RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT



NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY SELLER CREATES LEGAL OBLIGATIONS ON SELLER THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

**Property Address:** 18 CAMBRIDGE CT
**City, State & Zip Code:** MARYVILLE, IL 62062
**Seller's Name:** Donald Samson, Trustee

This report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _1-13_, 20_14_, and does not reflect any changes made or occurring after that date or of information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect) or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

*Seller's Interest is Bankruptcy & has never resided in the property*

YES  NO  N/A
1. ___  ___  ___  Seller has occupied the property within the last 12 months. (No explanation is needed.)
2. ___  ___  ___  I am aware of flooding or recurring leakage problems in the crawlspace or basement.
3. ___  ___  ___  I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property.
4. ___  ___  ___  I am aware of material defects in the basement or foundation (including cracks and bulges).
5. ___  ___  ___  I am aware of leaks or material defects in the roof, ceilings or chimney.
6. ___  ___  ___  I am aware of material defects in the walls or floors.
7. ___  ___  ___  I am aware of material defects in the electrical system.
8. ___  ___  ___  I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool).
9. ___  ___  ___  I am aware of material defects in the well or well equipment.
10. ___  ___  ___  I am aware of unsafe conditions in the drinking water.
11. ___  ___  ___  I am aware of material defects in the heating, air conditioning, or ventilating systems.
12. ___  ___  ___  I am aware of material defects in the fireplace or woodburning stove.
13. ___  ___  ___  I am aware of material defects in the septic, sanitary sewer, or other disposal system.
14. ___  ___  ___  I am aware of unsafe concentrations of radon on the premises.
15. ___  ___  ___  I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises.
16. ___  ___  ___  I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises.
17. ___  ___  ___  I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises.
18. ___  ___  ___  I am aware of current infestations of termites or other wood boring insects.
19. ___  ___  ___  I am aware of a structural defect caused by previous infestations of termites or other wood boring insects.
20. ___  ___  ___  I am aware of underground fuel storage tanks on the property.
21. ___  ___  ___  I am aware of boundary or lot line disputes.
22. ___  ___  ___  I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected.
23. ___  ___  ___  I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act.

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:
_____
_____

Check here if additional pages used: ___         *MRM*

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _____ *[signature]* _____ Date: 1/13/14
Seller: _____ Date: _____

**PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.**

Prospective Buyer: Marla R. Murphy   Date: 2/15/14   Time: 4:40 PM
Prospective Buyer: _____ Date: _____ Time: _____

108 Revised 08/09                              COPYRIGHT © BY ILLINOIS ASSOCIATION OF REALTORS®

# RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
## ARTICLE 2: DISCLOSURES
## 765 ILCS 77/5 et seq.

Section 5: As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"Residential real property" means real property improved with not less than one nor more than four residential dwelling units; units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

Section 10. Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

Section 15. The provisions of the Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgement, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgement or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

Section 20. A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

Section 25. Liability of seller. (a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to the Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

Section 30. Disclosure supplement. If prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

Section 35. Disclosure report form. The disclosures required of a seller by this Act, shall be made in the following form: [form on reverse side]

Section 40. Material defect. If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of the Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

Section 45. This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

*[signatures]*

Section 50. Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

1) personal or facsimile delivery to the prospective buyer;

2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement, or

3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of the Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

Section 55. Violations and damages. If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of the Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

Section 60. No action for violation of the Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

Printed Using Professional Computer Forms Co. On-Line Forms Software 3/10

APPROVED BY THE SOUTHWESTERN ILLINOIS REGIONAL MULTIPLE LISTING SERVICE, INC



**MOLD DISCLOSURE** Copyright© 2008 Southwestern Illinois Regional Multiple Listing Sen



Printed Name(s) of Seller(s): _____ Donald Samson, Trustee _____

Printed Name(s) of Buyer(s): _____

Property Address: _____ 18 CAMBRIDGE CT MARYVILLE, IL 62062 _____

1. **SELLER DISCLOSURE.** To the best of Seller's actual knowledge, Seller represents:

   a. The property described herein ☐ has ☐ has not been previously tested for molds, fungi, mildew, and similar organisms ("molds");

   Note: If answer to a. is "has not," then skip b. and c. and go to Section #2.
   If answer to a. is "has," then complete b. and c.

   b. The molds found ☐ were ☒ were not identified as toxic or harmful molds;

   c. With regard to any molds that were found, measures ☐ were ☐ were not taken to remove those molds.

   *Seller is [in a] bankruptcy and has never resided on the property DS*

Buyers' Initials

2. _MRM_ ☐ **MOLD INSPECTIONS.** Molds, fungi, mildew, and similar organisms may exist in the property of which the Seller is unaware and has no actual knowledge. These contaminant's generally grow in places where there is excessive moisture, such as where leakage may have occurred in roofs, pipes, walls, plan pots, or where there has been flooding. A professional home inspection may not disclose molds. Buyer may wish to obtain an inspection specifically for molds to more fully determine the condition of the Property and its environmental status. Neither Seller's agents nor Buyer's agents are experts in the field of mold. The Buyers are strongly encouraged to satisfy themselves as to the Property condition.

3. **RECEIPT OF COPY.** Seller and Buyer has read this Mold Disclosure and by their signatures hereon acknowledge receipt of a copy thereof.

_____ 1-13-14        _Marla R. Murphy_ 2/15/14
Seller /Donald Samson, Trustee  Date         Buyer                      Date

_____         _____
Seller                    Date              Buyer                    Date




## Illinois Association of REALTORS®

## DISCLOSURE OF INFORMATION ON RADON HAZARDS
(For Residential Real Property Sales or Purchases)

**Radon Warning Statement**

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure** (Initial each of the following which applies)

_____ (a) ~~Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).~~

_____ (b) ~~Seller has provided the purchaser with the most current records and reports pertaining to elevated radon concentrations within the dwelling.~~

_____ (c) ~~Seller either has no knowledge of elevated radon concentrations in the dwelling or prior elevated radon concentrations have been mitigated or remediated.~~

_____ (d) Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment** (Initial each of the following which applies)

_____ (e) Purchaser has received copies of all information listed above.

_____ (f) Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement** (Initial IF APPLICABLE)

_____ (g) Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

Seller _[signature]_ Date _1-13-14_
Seller _____ Date _____
Purchaser _Marla R. Murphy_ Date _2/14/15_
Purchaser _____ Date _____
Agent _[signature]_ Date _1-13-14_
Agent _[signature]_ Date ~~1-13-14~~ _2-15-14_
Property Address _18 Cambridge Ct_ City, State, Zip Code _Maryville IL 62062_

FORM 422 (10/2012)                              COPYRIGHT ILLINOIS ASSOCIATION OF REALTORS®

Printed Using Professional Computer Forms Co. On-Line Forms Software U13

_MRM_

Customer Display

**Prepared For You By:**
**SHARON JONES ABR, GRI, SFR,**

**RE/MAX INTEGRITY REALTY CENTRE**
**(618) 558-7191**



| | |
|---|---|
| MLS: 4300467 | Current Price: $234,900 |
| Status: Active | Bedrooms: 3 |
| Prop Type: Re-Sale Home | Total Baths: 3 |
| List Board: GGAR | Full Baths: 3 |
| Photos: 24 | 3/4 Baths: 0 |
| | Half Baths: 0 |
| | Fin Bsmt Rms: 6 |
| | Fireplaces: 1 |
| Style: 1 STORY | Garages: 3 CAR |
| R-Factors: C:   W:   HERS Score: | Parking: ATTACHED GARAGE |
| Exterior: BRICK COMBO | |
| Roof: SHINGLE | |
| Heat: FORCED AIR | Apx Finished Abv Grd: 1794 |
| Fuel: GAS | Apx Finished Blw Grd: 1541 |
| A/C: CENTRAL AIR | Apx Total Finished: 3335 |
| Elec: CIRCUIT BREAKERS | Aprx Yr Built: 1997 |
| Wtr: PUBLIC | |
| Green Cert: | |
| Swr: PUBLIC | |
| Basement: FULL | |
| Driveway: CONCRETE | |

Address: 18 CAMBRIDGE CT   Unit:
City: MARYVILLE St: IL Zip: 62062
Subdivision: STONEBRIDGE FARMS

Elem Sch: COLLINSVILLE DIST 10
Mid Sch: COLLINSVILLE DIST 10
High Sch: COLLINSVILLE

| ROOM | DIM | LEVEL | FLOORING |
|---|---|---|---|
| Living | 18 x 16 | MAIN | CARPET |
| Dining | 14 x 12 | MAIN | WOOD |
| Kitchen | 14 x 12 | MAIN | WOOD |
| Family | 16 x 13 | BASEMENT | CERAMIC |
| Mst Bedrm | 17 x 12 | MAIN | CARPET |
| 2 Bedrm | 13 x 12 | MAIN | CARPET |
| 3 Bedrm | 12 x 12 | MAIN | CARPET |
| 4 Bedrm | 0 x 0 | | |
| 5 Bedrm | 0 x 0 | | |
| Laundry | 7 x 6 | MAIN | CERAMIC |
| Full Bath | 8 x 5 | MAIN | CERAMIC |
| 3/4 Bath | 0 x 0 | | |
| 1/2 Bath | 0 x 0 | | |
| MST Bath Full + | 11 x 8 | MAIN | CERAMIC |
| Full Bath | 10 x 5 | BASEMENT | CERAMIC |
| Kitchen Additional | 14 x 10 | BASEMENT | CERAMIC |
| Office | 9 x 7 | BASEMENT | CERAMIC |
| Non Conforming Bedroom | 17 x 13 | BASEMENT | CARPET |
| Sitting Room | 11 x 13 | BASEMENT | CARPET |
| Non Conforming Bedroom | 13 x 9 | BASEMENT | CARPET |

LAND/ACRES:  Aprx Acres:
Lot Size: 59.58 X 168.26 IRR
Frontage:   Waterfront:
Lot/Site Features: CUL-DE-SAC , FENCED
Pool: INGROUND
ADA Compliant: N

Appliances: NONE
Features: DECK , FIREPLACE , HARDWOOD FLOORS , KITCHEN ISLAND , PORCH:COVERED , WALK:IN CLOSET
Amenities: GOLF COURSE
Additional Rooms: LAUNDRY MAIN FLOOR

Avg Mo Utilities: $   HPP: N   Assoc Fees: $   Yr/Mo:
Assoc Fees Include:
Special Assessment: $   Yr/Mo:

County: MADISON   Township: 21   Section: 09
Parcel ID No: 13-2-21-09-04-404-009   Taxes: $4,078   Tax Year: 2011
Zoning: Single Family  Exemptions: DISABLED PERSONS , HOMESTEAD SENIOR , OWNER OCCUPIED
Legal: 3RD ADDN STONEBRIDGE FARMS LOT 115   Short Sale: N   Bank/HUD Owned: N
Builders Name:

Remarks: Gorgeous up-to-date ranch on a quiet culdesac with wooded views. New Roof in 2012. Eligible for 100% USDA Financing. Cathedral Ceiling & fireplace in large living room open to Formal Dining, Breakfast Area & Kitchen w hardwood floors. Kitchen has a breakfast bar, center Island & custom trimmed cabinets. SPLIT BEDROOM PLAN - Master suite features an extra large walk in closet & luxury master bath with dual sinks, whirlpool tub, separate shower & linen closet. Other two bedrooms nice sized with good closet space share another full bath & linen closet. Relax on the large two tier deck and enjoy the huge fenced backyard. The inground pool & cabana are bonuses! Lower level is like another house 2 nonconforming bedrooms, one w/a sitting room & extra large walk in closet, 3rd full bath, 2nd full kitchen, family room, office and an unfinished storage room. Three car 23x32 finished garage has an epoxy painted floor. CALL TODAY for your personal tour

Directions: Keebler Rd to Stonebridge Dr to Fieldstone Drive to Ambrose Crossing to Cambridge Court or Sugarloaf Rd to Fieldstone Drive Left Ambrose Crossing to Cambridge Court
Cross Road: AMBROSE CROSSING

02/15/2014

Copyright 2014 Southwestern Illinois Regional Multiple Listing Service, Inc. All Information regardless of source, including square footage and lot sizes are not guaranteed and should be verified by personal inspection and/or with the appropriate professional(s).

Made by InnoVia MLS



